Case 4:23-cv-03536   Document 31   Filed on 08/11/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
August 11, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANGELA BRADSHAW, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 23-3536 |
| § | |
| AMGUARD INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

Houston gets a lot of storms. A significant storm is often followed by homeowners' claims that their property insurer pay for new roofs or other expensive household construction work. This case arises from Winter Storm Uri, which hit in February 2021. The plaintiff, Angela Bradshaw, submitted a timely claim for storm damage to her home and the costs she incurred to make the repairs. She completed the repairs in 2021. Her insurer, AmGuard Insurance Company, paid for the repairs completed by Ms. Bradshaw on her home and paid an additional $15,000 to cover personal property losses. Ms. Bradshaw signed a settlement release. One would think that that would have resolved the parties' disputes. Not so.

Nearly two years later, Ms. Bradshaw—now represented by the Dick Law Firm—sent a letter to AmGuard demanding an additional $90,923.82 in repair costs and $10,000 in attorney's fees and costs. The new damages estimate was never paid by Ms. Bradshaw and would redo repairs that AmGuard previously paid for.

The court rejects Ms. Bradshaw's attempt to get a second bite at the insurance apple. Based on the briefing, record, and applicable case law, this court grants AmGuard's motion for summary judgment. The reasons for this ruling are below.[1]

## I.   Background

Ms. Bradshaw's home was insured by AmGuard's policy number ANHO117115 between April 27, 2020, and April 27, 2021. (Docket Entry No. 24-2).[2] Ms. Bradshaw contends that a pipe burst in her home during Winter Storm Uri, which caused below-freezing temperatures in February 2021. (Docket Entry No. 25 at 4). After inspecting the property, AmGuard paid Ms. Bradshaw $22,655.98. (Docket Entry No. 24-12).[3] Ms. Bradshaw signed the settlement agreement on May 4, 2021, and AmGuard heard nothing else from her for more than a year and a half. (Docket Entry No. 24-3 at 5–6).

---

[1] The parties' evidentiary objections are addressed as relevant to this opinion. The evidentiary objections not addressed in this opinion are denied as moot.

[2] AmGuard submitted a sworn declaration from Victoria Carnathan, a "Claims Manager" and "custodian of records" for AmGuard. (Docket Entry No. 24-1). Ms. Carnathan's declaration establishes her role and personal knowledge of the Policy and Ms. Bradshaw's claims. (*Id.* ¶ 2). Based on her duties, responsibilities, and knowledge, Ms. Carnathan states that the attached policy, claim notes, claim correspondence, and investigation reports are "original records or exact duplicates . . . kept in the course of regularly conducted business activity" and made as part of AmGuard's "regular practice." (*Id.* ¶¶ 4–7). Many of the records are time-stamped and list the AmGuard employee who prepared them. These details and the affidavit sufficiently guarantee the trustworthiness of the records. Ms. Bradshaw's objection to Ms. Carnathan's declaration is puzzling, given that the bare-bones and conclusory business records affidavit submitted by Ms. Bradshaw would clearly fail under the same reasoning. *See* (Docket Entry No. 25-1). Because Ms. Carnathan's declaration is "made on personal knowledge," "set[s] out facts that would be admissible in evidence," and shows that she is competent to testify about the attached records, Ms. Bradshaw's objection to Ms. Carnathan's declaration is overruled. *See* FED. R. CIV. P. 56(c)(4); FED. R. EVID. 602, 803(6), 807.

[3] AmGuard's motion says that it "paid $26,883.34" after inspecting the property in March 2021, and "heard nothing else from Bradshaw for two years." (Docket Entry No. 24 at 8). The cited records show that AmGuard paid $22,655.98 to Ms. Bradshaw between March 2021 and May 2021, and then paid an additional $4,227.36 to Ms. Bradshaw, Eric Dick, and the Dick Law Firm in April 2023. (Docket Entry No. 24-12). Based on that evidence, AmGuard had paid $22,655.98 to Ms. Bradshaw in May 2021.

In January 2023, the Dick Law Firm sent a letter to AmGuard stating that the Firm was representing Ms. Bradshaw and requesting a reinspection of Ms. Bradshaw's February 2021 loss. (Docket Entry No. 24-6). AmGuard subsequently received a $90,923.82 estimate from Vortex Consulting, LLC, for repairs to Ms. Bradshaw's home. (Docket Entry Nos. 24-7, 24-10). AmGuard reinspected the property and concluded that all repairs had already been completed. (Docket Entry No. 24-7 at 6). In February 2023, AmGuard sent the Dick Law Firm a letter that reported its reinspection findings and asked for additional documents from Ms. Bradshaw "demonstrating the actual amounts spent on repairs." (*Id.*). AmGuard's letter quoted the portion of Ms. Bradshaw's insurance policy requiring her to "[k]eep an accurate record of repair expenses" and "[p]rovide . . . records and documents" that AmGuard requests. (*Id.* at 4).

In April 2023, AmGuard sent a revised damages estimate to Ms. Bradshaw and issued her a $4,227.36 supplemental payment. (Docket Entry Nos. 24-9, 24-12). With this additional payment, AmGuard has paid Ms. Bradshaw a total of $26,883.34 to cover her February 2021 loss. (Docket Entry No. 24-12). The April 2023 letter again reiterated AmGuard's request for documents showing what she had in fact paid for repairs of the property damage caused by the burst pipe. (Docket Entry No. 24-9 at 2).

In June 2023, the Dick Law Firm sent a Demand Letter and Invocation of Appraisal to AmGuard, seeking $90,923.82 in damages based on the Vortex Estimate and an additional $10,000 in attorney's fees and costs. (Docket Entry No. 24-11). AmGuard declined to pay the demand and again reiterated its request for Ms. Bradshaw to produce the documents required under the Policy. (Docket Entry No. 24-5).

Ms. Bradshaw sued AmGuard in state court for: (1) breach and anticipatory breach of contract; (2) breach of the duty of good faith and fair dealing; (3) violations of the Texas Deceptive

3

Trade Practices Act § 17.46(a) and (b); (4) violations of the Texas Prompt Payment of Claims Act, TEX. INS. CODE §§ 542.051–542.061; (5) unfair insurance practices under Texas Insurance Code Chapter 541; (6) fraud; and (7) ongoing conspiracy to commit illegal acts. (Docket Entry No. 1-4). AmGuard removed based on diversity jurisdiction. (Docket Entry No. 1).

During discovery, Ms. Bradshaw produced four invoices for work completed at her home. These invoices are from: (1) J. Bradshaw Plumbing, for $4,557.04; (2) Woffs Painting, for $1,800.00; (3) Koala Insulation, for $4,499.00; and (4) German Rodriguez, for $2,800.00. (Docket Entry No. 24-14).[4] AmGuard repeatedly requested, and this court ordered, that Ms. Bradshaw produce all documents showing the actual costs she had paid for the repairs. Other than the four invoices, Ms. Bradshaw did not produce any documents showing the amounts she had paid for repairs to her home as a result of Winter Storm Uri.

## II.   The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party"

---

[4] It is not clear from the record whether this was the first time that AmGuard received these invoices.

and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it]

5

has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250).

### III.  The Breach of Contract Claim

#### A.  The Personal Property Claim

In May 2021, Ms. Bradshaw signed a release for personal property coverage relating to her February 2021 insurance claim. (Docket Entry No. 24-13). Under Texas law, a release "operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). To be valid, "the releasing instrument must mention the claim to be released." *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (quotation marks omitted).

The release agreement states that Ms. Bradshaw was paid $15,000, and that she released AmGuard from any other claim for personal property coverage related to property damage occurring at her house on February 16, 2021. (Docket Entry No. 24-13 at 1, 3). Ms. Bradshaw has not pointed to any evidence that would support setting aside the release agreement. *Cf. Deer Creek Ltd. v. N. Am. Mortg. Co.*, 792 S.W.2d 198, 201 (Tex. App.—Dallas 1990, no writ) ("A release, valid on its face, until set aside, is a complete bar to any later action based on matters covered by the release."). Ms. Bradshaw's surreply asserts that the "payment was grossly inadequate for the documented damages" and the release was obtained under duress, without full disclosure, and under undue pressure. (Docket Entry No. 27 at 8–9). Ms. Bradshaw cites no evidence or law supporting these assertions. They provide no basis to set aside the release.

6

Even when given a chance to supplement those assertions with evidence, Ms. Bradshaw points to only two lines of deposition testimony. (Docket Entry No. 29 at 5) (citing Docket Entry No. 29-1 at 53:20-22). They provide no basis to set aside the settlement agreement. Ms. Bradshaw testified that, when she spoke with AmGuard about the settlement payment, "I was just desperate. . . . I don't really recall." (Docket Entry No. 29-1 at 53:20-22).[5] That is insufficient to raise a fact issue as to duress. *See Quest Expl. & Dev. Co. v. Transco Energy Co.*, 24 F.3d 738, 743 (5th Cir. 1994) ("unsubstantiated assertions" about pressure to enter into a settlement agreement did not preclude enforcement of that agreement on summary judgment); *Preston v. Pegasus Sols., Inc.*, No. 3:04-CV-1924-P, 2006 WL 757960, at *4 (N.D. Tex. Mar. 23, 2006) (listing the elements of duress as an affirmative defense to a contract, including "a threat to do some act which the party threatening has no legal right to do" and "some illegal exaction or some fraud or deception").

Because Ms. Bradshaw signed a valid contract releasing AmGuard from all personal property claims from the storm on February 16, 2021, the court grants summary judgment to AmGuard on Ms. Bradshaw's breach of contract claim based on an alleged failure to pay for her personal property loss.

### B.  The Property Repair Claim

Ms. Bradshaw also claims that AmGuard breached the Policy by failing to adequately compensate her for the damage caused to her home by Winter Storm Uri. AmGuard argues that it is entitled to summary judgment on this claim because: (1) AmGuard satisfied its duties under the

---

[5] The other language quoted in the supplemental brief—"they caught me at a bad moment"—does not appear in the cited testimony. *See* (Docket Entry No. 29 at 5); (Docket Entry No. 29-1 at 53:20-22). Regardless, it does not change the analysis.

Policy's "Loss Settlement" provision; and (2) Ms. Bradshaw materially breached the conditions precedent to coverage by failing to provide documentation and failing to cooperate.

### 1.     The Loss Settlement Provision

Under the Policy, AmGuard "will pay no more than the actual cash value of the damage until actual repair or replacement is complete." (Docket Entry No. 24-2 at 40) (Policy § I(D)(2)(d)). "Once actual repair or replacement is complete, [AmGuard] will settle the loss" according to the Policy's "Loss Settlement" provision. *Id.* That provision states that "[c]overed property losses are settled as follows":

> Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
>
> a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:
>
>> (1) The limit of liability under this policy that applies to the building;
>>
>> (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
>>
>> (3) The necessary amount actually spent to repair or replace the damaged building.

(*Id.* at 39) (Policy § I(D)(2)(a)).

AmGuard argues that there is no factual dispute as to whether it paid the "necessary amount actually spent to repair or replace" Ms. Bradshaw's home. *See id.* (Policy § I(D)(2)(a)(3)). Ms. Bradshaw produced only four invoices for repair work completed on her home, totaling $13,656.04. (Docket Entry No. 24-14). Ms. Bradshaw does not argue that AmGuard did not pay her what was owed based on the invoices. *See* (Docket Entry No. 24-12); (Docket Entry No. 24-14 at 3). There is no evidence that Ms. Bradshaw spent any additional money to repair damage to her home from Winter Storm Uri.

8

Ms. Bradshaw completed the repairs and then submitted the claim to AmGuard for payment. It paid. Ms. Bradshaw now argues, almost two years later, that while the repairs were "completed," they were not "adequate." (Docket Entry No. 27 at 2, 4). She demands that AmGuard pay her more than $90,000 to fund the repairs and improvements in the Vortex Estimate. AmGuard's expert, Mark West, opined that the Vortex Estimate includes amounts to make repairs that AmGuard already paid for, amounts to repair damage that does not exist or did not result from the storm, and amounts for improvements—not repairs—such as staining wood trim that had "never been stained or finished," (Docket Entry No. 24-16 at 3, 7–8). At best, the Vortex Estimate appears to cover work that Ms. Bradshaw wishes she had done after the storm, or to cover redoing the repairs by a different contractor than the one she had hired. But Ms. Bradshaw chose the original contractors—one of whom was her father. *See* (Docket Entry No. 24-20 at 28). AmGuard paid for the repairs that Ms. Bradshaw had done and submitted invoices for. The Policy does not provide coverage for a do-over or for improvements unrelated to the February 2021 storm damage.

Testimony from Judson Ulrich, Vortex's estimator, does not save Ms. Bradshaw's claims. As a preliminary matter, Mr. Ulrich has not been properly designated as an expert. Ms. Bradshaw purported to designate Mr. Ulrich as an expert on the nature, existence, cause, and amount of damage to her home, as well as cost estimates. (Docket Entry No. 22 at 1–3). But Mr. Ulrich never submitted a written report complying with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).[6] Ms. Bradshaw's summary judgment evidence includes a "business

---

[6] Ms. Bradshaw's expert designation does not state whether Mr. Ulrich is retained or not. (Docket Entry No. 22). At Mr. Ulrich's deposition, he did not dispute that he had been retained by Ms. Bradshaw's counsel for this case. (Docket Entry No. 24-19 at 5, 19). He testified that in 2022 or 2023, a "mutual friend" had "set up" an arrangement between him and Ms. Bradshaw's counsel, under which he was paid "$500 for the inspection and estimate, plus . . . $250 an hour for depositions and/or court." (*Id.* at 19–20). Ms. Bradshaw's counsel has retained Mr. Ulrich to testify in at least one other case. (*Id.* at 7). Mr. Ulrich never personally inspected Ms. Bradshaw's property. (*Id.* at 22). These facts indicate that Mr. Ulrich must

9

records affidavit" stating that Mr. Ulrich is the "custodian of records" for Vortex but offering no information about Mr. Ulrich's qualifications to assess water damage to a home. (Docket Entry No. 25-1) (capitalization adjusted). Ms. Bradshaw's surreply attached Mr. Ulrich's resume for the first time, more than four months after the deadline for Ms. Bradshaw's expert designations. (Docket Entry No. 27-1). The resume is not signed by Mr. Ulrich and does not satisfy the requirements of Rule 26(a)(2)(B). Ms. Bradshaw has not provided the information necessary to show that Mr. Ulrich's testimony would be admissible under Rule 702 of the Federal Rules of Evidence. *See* FED. R. EVID. 702; FED. R. CIV. P. 26(a)(2)(B), 56(c).

Even if the court considered Mr. Ulrich's testimony, the outcome would not change. Ms. Bradshaw argues that Mr. Ulrich's testimony is evidence that the water remediation was "inadequate" or "improper." (Docket Entry No. 29 at 4–5). Like the Vortex Estimate, Mr. Ulrich's testimony shows only that he would have done the repairs differently. *See, e.g.*, (Docket Entry No. 24-19 at 21) (Mr. Ulrich's "biggest opinion" was that "the materials were not properly dried and extracted in a timely fashion").

Before the repairs were complete, AmGuard owed "no more than the actual cash value of the damage." (Docket Entry No. 24-2 at 40) (Policy § I(D)(2)(d)). When Ms. Bradshaw stated that she had completed the repairs and submitted the invoices, AmGuard paid her "[t]he necessary amount actually spent to repair or replace the damaged building," as required by the Policy's "Loss Settlement" provision. *See* (*id.* at 39) (Policy § I(D)(2)(a)(3)). The Policy requires nothing more from AmGuard. There is no requirement that AmGuard pay Ms. Bradshaw to redo repairs

---

comply with Rule 26(a)(2)(B)'s written report requirement, which he has not done. *See Russell v. Big V. Feeds, Inc.*, No. 4:23-CV-622, 2024 WL 4528913, at *3 (E.D. Tex. Oct. 18, 2024); *DiSalvatore v. Foretravel, Inc.*, No. 9:14-CV-00150-KFG, 2016 WL 7742996, at *2 (E.D. Tex. May 20, 2016).

completed almost two years earlier if she later determines that they were "inadequate." And the Policy does not require AmGuard to pay Ms. Bradshaw more than $90,000 to reimburse her for repair costs that she never incurred.

AmGuard has fulfilled its payment obligations under the Loss Settlement provision.

### 2. The Conditions Precedent to Coverage

If Ms. Bradshaw has not incurred repair costs above what the four invoices she submitted to AmGuard showed—which AmGuard paid her for—then AmGuard has no further payment obligation under the Policy. If Ms. Bradshaw has incurred expenses above what AmGuard paid, then she must produce documentation showing what expenses she incurred. She has not done so. To the extent Ms. Bradshaw has not been reimbursed for any repairs that she paid for,[7] she is not entitled to recover those expenses because she failed to provide AmGuard with documents showing what repairs she paid to have done.

The Policy outlines Ms. Bradshaw's "Duties After Loss." (Docket Entry No. 24-2 at 63). Ms. Bradshaw is required to "[c]ooperate with [AmGuard] in the investigation of a claim." (*Id.*). "If repairs to the property are required," Ms. Bradshaw must "[m]ake reasonable and necessary repairs to protect the property" and "[k]eep an accurate record of repair expenses." (*Id.*). Ms. Bradshaw must also "[p]rovide [AmGuard] with records and documents" that AmGuard requests. (*Id.*). If Ms. Bradshaw fails to comply with those duties and her failure prejudices AmGuard, AmGuard has "no duty to provide coverage." (*Id.*).

---

[7] There is no evidence in the record that Ms. Bradshaw incurred actual costs to repair the damage to her home above what AmGuard has paid. Nonetheless, the court will address Ms. Bradshaw's argument that Winter Storm Uri prevented her from documenting all her expenses.

AmGuard requested documents showing the repairs and the actual costs of them on multiple occasions, both before and during this litigation. The only evidence of actual expenses incurred by Ms. Bradshaw are the four contractor invoices, totaling $13,656.04. *See* (Docket Entry No. 29 at 2). There is no evidence that Ms. Bradshaw paid the $90,923.82 presuit demand amount. Ms. Bradshaw has not pointed to any evidence of money owed for repairs she completed above what AmGuard has already paid.

Ms. Bradshaw argues that she cooperated by promptly reporting the claim, mitigating the damage, saving and submitting the invoices, and providing access for AmGuard's adjuster to inspect. (*Id.*). She does not contest that the record contains no evidence that she has actually incurred expenses that AmGuard has not reimbursed. Rather, Ms. Bradshaw argues that her ability to document the repairs she completed was affected by "unprecedented documentation challenges" caused by Winter Storm Uri. (Docket Entry No. 25 at 6). Ms. Bradshaw maintains that her failure to provide the requested documentation should be excused. *See, e.g.*, (*id.*). The court disagrees.

After the court ordered Ms. Bradshaw to supplement her response with evidence supporting her claims, she identified the following "Extraordinary Circumstances Affecting Documentation": (1) she had recently undergone brain and hand surgery, (Docket Entry No. 29 at 3) (citing Bradshaw Dep. at 7:11-15); (2) she lost power during Winter Storm Uri, *id.* (citing Bradshaw Dep. at 11:15-16)); and (3) she had to complete the repairs on an emergency basis because there was running water and hazardous material in the house, *id.* (citing Bradshaw Dep. at 8:8-11, 10:9-21, 11:7-19). This testimony from Ms. Bradshaw's deposition is the only evidence in the record of the "unique challenges" purportedly "affecting Bradshaw's ability to maintain normal documentation." *See* (*id.*). At her deposition, Ms. Bradshaw did not explain how any of those circumstances prevented her from saving or retrieving documents showing the repairs she did.

Even if she could not locate her own copies, she identified no circumstances preventing her or her lawyer from obtaining the documents. She did not describe any repairs that she paid for but could not document due to circumstances outside of her control. Her testimony does not raise a fact issue as to whether "Winter Storm Uri constituted a force majeure event" that excused her failure to comply with her duties under the Policy. *See* (Docket Entry No. 27 at 7).

Nonetheless, under Texas law, "[a]n insured's failure to cooperate will not operate to discharge the insurer's obligations under the policy unless the insurer is actually prejudiced or deprived of a valid defense by the actions of the insured." *Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 930 (Tex. App.—Dallas 2011, no pet.); *cf. Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.").

The Policy states that AmGuard's payment for repairing damaged property will be the smallest of three metrics, one of which is the "necessary amount actually spent to repair or replace the damaged building." (Docket Entry No. 24-2 at 39). This provision protects AmGuard from having to pay amounts that exceed the costs actually incurred by the insured. Because Ms. Bradshaw has failed to produce documents showing what she actually paid for covered repairs beyond what AmGuard paid, AmGuard cannot calculate the additional covered loss amount, if any. Ms. Bradshaw's failure to comply with her documentation and production duties is a material breach that prejudiced AmGuard. *See Clarendon Nat'l Ins. Co. v. FFE Transp. Servs., Inc.*, 176 F. App'x 559, 562 (5th Cir. 2006) (per curiam) ("The Texas Supreme Court has held that prejudice is the loss of a valuable right or benefit."); *Barons Fin. Servs. (UK) Ltd. v. Predator Techs., LLC*,

No. CIV.A. H-07-1017, 2008 WL 45796, at *4 (S.D. Tex. Jan. 2, 2008) ("A breach is material if the injured party does not receive the substantial benefit of the bargain.").

* * *

Because AmGuard fulfilled all of its obligations under the Policy and Ms. Bradshaw failed to produce the documentation required under the Policy, the court grants summary judgment to AmGuard on Ms. Bradshaw's breach of contract claim based on an alleged failure to pay her property repair claim. Ms. Bradshaw's breach of contract claim is dismissed, with prejudice.

## IV.   The Extra-Contractual Claims

In addition to the breach of contract claim, Ms. Bradshaw's complaint asserted violations of the Texas Insurance Code and the Deceptive Trade Practices Act, breach of the duty of good faith and fair dealing, fraud, and conspiracy. (Docket Entry No. 1-4 at 15–34). Ms. Bradshaw's summary judgment response and surreply cite no evidence supporting these claims. *See, e.g.*, (Docket Entry No. 25 at 8) (asserting only that "AmGuard's conduct raises fact issues regarding its statutory and common law duties" and citing no evidence). Her supplemental brief cites only three pieces of evidence supporting all her extra-contractual claims: (1) the Vortex Estimate, (2) Ms. Bradshaw's testimony that AmGuard inspected "weeks" after the incident, and (3) Ms. Bradshaw's testimony that AmGuard "caught [her] at a bad moment" when she "was desperate." (Docket Entry No. 29 at 5). That is insufficient to raise a fact issue as to any of her common law or statutory claims.

The fact that AmGuard did not breach the Policy also precludes recovery on Ms. Bradshaw's extra-contractual claims. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005); *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) ("When an insured seeks to recover damages that are predicated on, flow from, or stem from policy

benefits, the general [independent-injury] rule applies and precludes recovery unless the policy entitles the insured to those benefits." (quotation marks and quoting reference omitted)).

## V.    Conclusion

AmGuard's motion for summary judgment, (Docket Entry No. 24), is granted. This case is dismissed, with prejudice.

SIGNED on August 11, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge